Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAN WANG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DADA NEXUS LIMITED, JEFF HUIJIAN HE, BECK ZHAOMING CHEN, LAURA MARIE BUTLER, BAOHONG SUN, JIAN HAN, AND JD.COM, INC.<br><br>Defendants. | Case No. 2:24-cv-00239-SVW-BFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS**<br><br><u>CLASS ACTION</u><br><br>Date:     March 17, 2025<br>Time:     1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   CASE BACKGROUND.....................................................................2

      A.    Plaintiffs' Allegations.........................................................2

      B.    Procedural History and Settlement......................................3

III.  CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ....3

IV.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......4

      A.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class.................................................................................5

      B.    The Settlement is the Result of Arm's-Length Negotiations .............6

      C.    The Relief the Settlement Provides is Adequate, Given the Risk, Expense, Complexity, and Likely Duration of Further Litigation .....7

      D.    The Settlement Meets the Remaining Rule 23(e)(2) Factors...........12

            1.   The Proposed Method for Distributing Relief is Effective ......12

            2.   The Proposed Award of Attorneys' Fees is Appropriate .........13

            3.   Other Agreements ................................................................13

            4.   Settlement Class Members are Treated Equitably....................13

      E.    The Remaining Ninth Circuit Factors Support Final Approval .......14

            1.   The Amount the Settlement Obtained Supports Final Approval.............................................................................. .......14

            2.   The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval ...............................................17

            3.   Experienced Counsel's Recommendations ..............................18

4.  The Favorable Reaction of the Settlement Class Supports Approval .................................................................................... 19

V.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ........ 20

VI.     NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS ..... ........................................................................................................... 21

VII.  CONCLUSION ....................................................................................... 22

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. SeaWorld Ent., Inc.*,
  2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ................................................22

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..............................................18

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004).......................................................................19

*Fleming v. Impax Labs. Inc*.,
  2022 WL 2789496 (N.D. Cal. July 15, 2022).................................................3

*Glass v. UBS Fin. Servs., Inc*.,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015).......................................................................10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)................................................................passim

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..........................................5, 8

*Heritage Bond,*
  2005 WL 1594389........................................................................................16

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012).....................................................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014)..................................................................11

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)............................................16

*In re ChinaCast Educ. Corp. Sec. Litig.*,
  2:12-cv-04621-JFW-PLA (C.D. Cal.)...........................................................11

iv

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) .................................................5

*In re Datatec Sys., Inc. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007)...................................................20

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019)...............................................16

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ...........................................................20

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................................8, 10

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................9, 18, 22

*In re Linkedin User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ....................8

*In re LJ Int'l, Inc. Sec. Litig.*,
   2009 WL 10669955 (C.D. Cal. Oct. 19, 2009).......................................16, 17

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)..................................................................14, 17

*In re NeoPharm, Inc. Sec. Litig.*,
   705 F. Supp. 2d 946 (N.D. Ill. 2010) ...........................................................10

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................4, 9, 16, 20

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010).......................................................................10

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995).........................................................................18

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y. 2014) ............................................................... 10

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ................................................. 16

*In re Snap Sec. Litig.*,
  2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ................................................... 16

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ......................................................................... 4

*In re Tesla, Inc. Sec. Litig.*,
  2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ................................................... 10

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................. 20

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................................................. 17

*Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................................... passim

*Kendall v. Odonate Therapeutics, Inc.,*
  2022 WL 1997530 (S.D. Cal. June 6, 2022) ............................................. 16, 19

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ................................................... 4

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................... 8

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................... 18

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................................. 5

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ......................................................................... 17

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
   2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ................................................ 19

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................ 5

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................... 12, 18, 19

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .................................................................. 14, 15

*Oh v. Hamni Fin. Corp.*,
   2024 WL 3435259 (C.D. Cal. Mar. 19, 2024) ............................. 6, 7, 12, 22

*Pace v. Quintanilla*,
   2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .............................................. 18

Plaintiffs. *Farrar v. Workhorse Grp., Inc.*,
   2023 WL 5505981 (C.D. Cal. July 24, 2023) .............................................. 13

*Roberti v. OSI Sys, Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ................................................. 7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................... 7, 8, 21

*Salazar v. Midwest Servicing Grp., Inc.*,
   2018 WL 3031503 (C.D. Cal. June 4, 2018) ................................................. 8

*Schneider v. Champignon Brands Inc.*,
   2022 WL 22879587 (C.D. Cal. Nov. 1, 2022) ..................................... 14, 18

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ................................................................. 15

*Thomas v. MagnaChip Semiconductor Corp.*,
   2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) .............................................. 13

*Tom v. Com Dev USA, LLC*,
   2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) .............................................. 14

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)..............................................................................8

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021)..............................................16

*Vinh Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ...............................................14

*Wong v. Arlo Techs., Inc.*,
2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ...............................................7

**Statutes**

15 U.S.C. § 78u-4(a)(7).....................................................................................21

**Rules**

Federal Rule of Civil Procedure 23.............................................................passim

**Other Authorities**

Manual for Complex Litigation (Third) § 30.44 (1995) ...................................19

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

Lead Plaintiff Senthil Subramanian and Named Plaintiff Yan Wang ("Plaintiffs") submit this memorandum in support of their Motion for Final Approval of the Settlement, Plan of Allocation, and Final Certification of the Settlement Class.[1]

## I.  INTRODUCTION

Plaintiffs and Defendants Dada Nexus Limited ("Dada") and JD.com, Inc. ("JD", and with Dada, "Defendants") settled this securities class action for $4,800,000. If approved, the Settlement will recover approximately 13.7% of the maximum estimated by Plaintiffs' expert. The Settlement, the product of arm's-length negotiations, is a fair, reasonable, and adequate result given the real risk that Plaintiffs would not obtain a larger sum – or any recovery at all – if litigation were to continue.

As set forth below, the Settlement satisfies the standards set forth in Federal Rule of Civil Procedure 23 to ensure that a settlement is "fair, reasonable, and adequate" to class members as well as the Ninth Circuit's factors. Even if Plaintiffs' claims survived a motion to dismiss, proving them and obtaining a greater recovery would require prevailing at class certification, summary judgment, trial, and on appeal. Rather than engage in protracted litigation with no assurance of success, Plaintiffs obtained a substantial, guaranteed recovery for investors that they and Lead Counsel believe is the best outcome for the Settlement Class. In light of the obstacles to recovery, including pursuing this case against China-based Defendants, and the significant amount of time and expenses that continued litigation would entail, the Settlement is fair, reasonable, and adequate and merits Court approval.

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement ("Stipulation") (Dkt. 59). Citations to "Chen Decl." or "¶__" are to the Declaration of Jing Chen. Citations to "Ex. __" are to exhibits to the Chen Decl. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata (Ex. 1). Citations to "Fee Brief" are to the Memorandum of Points and Authorities in Support of the Motion for an Award of Attorneys' Fees and Expenses, and Award to Plaintiffs.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

The proposed Plan of Allocation ("Plan") was developed by Lead Counsel in consultation with an expert and the Claims Administrator, Strategic Claims Services ("SCS"). The Court should approve the Plan as fair and reasonable because it comports with applicable legal principles as well as Plaintiffs' theory of damages and treats all Settlement Class Members equitably.

Following the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. 68), Notice was disseminated to 16,129 potential Settlement Class Members. Bravata Decl., ¶11. The Notice program satisfies the requirements of Rule 23 and due process. To date, no one has objected to or sought exclusion from the Settlement. *Id*., ¶¶15-16. This further demonstrates that the Settlement and Plan warrant approval.

Finally, the Settlement Class should be certified because it meets the requirements of Rule 23(a) and (b)(3) and no pertinent changes have transpired that would upset or alter the Court's preliminary findings and determinations.

## II.    CASE BACKGROUND

### A.    Plaintiffs' Allegations[2]

Plaintiffs allege that between March 2023 and April 2024, Dada artificially inflated revenues to meet its revenue forecasts, deeming its actions "suspicious practices." Dada employees allegedly accomplished the scheme through fraudulent "roundtripping" transactions. Upon discovery of the misconduct, Dada set forth its findings in several disclosures. [Corrected] Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (Dkt. 45, ¶¶49, 57, 59-60, 64-66, 70). Dada's subsequent disclosures also referred to certain "indicia of suspicion" that certain employees, including Defendants He and Chen, failed to "follow up" on. *Id*., ¶¶56, 60, 80. Former employees confirmed that Dada had an online system monitoring revenue, costs, and expenses on online advertising and marketing services to which He and Chen had access and about which He and Chen

---

[2] This section details only Plaintiffs' allegations, none of which Defendants admit.

received regular reports. *Id.*, ¶¶81-89. As a result of the fraud's disclosure over time, the price of Dada's American Depository Shares ("ADSs") fell materially on January 8-11, 2024, and April 23, 2024. *Id.*, ¶¶50-55, 72. During the Settlement Class Period, JD was a controlling and majority shareholder of Dada, and was aware of Dada's fraud before its public disclosure. *Id.*, ¶¶26, 56.

### B.    Procedural History and Settlement

Plaintiff Wang initiated this Action alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934. On April 5, 2024, the Court appointed Subramanian as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel. On June 12, 2024, Plaintiffs filed the operative Amended Complaint.

On August 14, 2024, the Parties participated in a mediation with the Honorable S. James Otero (Ret.) of JAMS. Not only is Judge Otero a former district judge who has overseen securities class actions in this District, he has experience mediating complex cases. (Ex. 2, Otero Decl., ¶¶5-6). Prior to the mediation, the Parties exchanged detailed mediation statements. The Parties did not reach an agreement during the mediation, but continued discussions with Judge Otero's guidance. Eventually, the Parties accepted a mediator's proposal to settle the Action.

Subsequently, Plaintiffs moved for preliminary approval of the Settlement and the Court entered the Preliminary Approval Order on November 27, 2024.

### III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. (Dkt. 68, ¶¶2-4). As detailed in Plaintiffs' brief in support of preliminary approval of the Settlement, (Dkt. 58, 4-9), certification of the Settlement Class under Rule 23 is merited.

Nothing has transpired since preliminary approval was granted that would alter the Court's findings. For the reasons set forth in both Plaintiffs' preliminary approval papers and in the Preliminary Approval Order, the Court should grant final certification of the Settlement Class. *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *4 (N.D.

Cal. July 15, 2022) (incorporating by reference class certification analysis from preliminary approval order as no facts had changed); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673 at *3 (S.D. Cal. Nov. 30, 2021) (same).

Thus, the Court should finally certify the Settlement Class for settlement purposes.

## IV.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Under Rule 23(e)(2), court approval is warranted if a settlement is "fair, reasonable, and adequate" taking into consideration whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These factors do not "displace any factor [courts apply], but rather [focus] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *4 (C.D. Cal. Oct. 10, 2019) (citing advisory committee notes, 324 F.R.D. 904, 918). "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Here, Rule 23(e) and the Ninth Circuit factors weigh in favor of final approval.[3]

### A.   Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Pursuant to Rule 23(e)(2)(A), courts must consider whether the "class representatives and class counsel have adequately represented the class." The Ninth Circuit requires courts to inquire: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

Plaintiffs have no antagonistic interests to other class members. Their claims are typical of Settlement Class Members' claims and Plaintiffs share an interest with other investors in obtaining the largest possible recovery for the Settlement Class. Plaintiffs purchased Dada's ADSs during the Settlement Class Period and suffered losses as a result of Defendants' alleged misconduct. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714,

---

[3] The Court's prior analysis of the Rule 23(e) and Ninth Circuit factors are "equally in favor of final approval now." *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 2554232, at \*2 (N.D. Cal. May 3, 2019) (adopting earlier conclusions in granting final approval).

at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff[s'] claims are typical of and coextensive with the claims of the Settlement Class, [their] interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."); *Jiangchen* 2019 WL 5173771, at *5 ("The claims of Lead Plaintiff and the other Settlement Class Members arise from the same alleged conduct: the purchase of [company] stock at inflated prices based on Defendants' alleged material misstatements."). Moreover, Plaintiffs worked closely with Lead Counsel to obtain the best possible result for the Settlement Class. Exs. 3-4 (Plaintiffs' Declarations).

Plaintiffs retained highly experienced counsel with a long track record of representing investors in securities class actions and complex litigation. Ex. 5 (firm resume). Courts in this District have recognized Rosen's experience and persistence in litigating securities class actions. *Oh v. Hamni Fin. Corp.*, 2024 WL 3435259, at *3 (C.D. Cal. Mar. 19, 2024) (finding Rosen adequate, had no conflict of interest with class members, and "diligent in pursuing this action since filing the Complaint."). This case is no different. During this litigation, Lead Counsel: (i) reviewed Dada's SEC filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewed public documents, reports (including research reports by securities and financial analysts), announcements, and news articles regarding Dada; (iv) retained investigators in China to interview former Dada employees and other knowledgeable third parties as well as locate documents; (v) consulted with a damages expert and an accounting expert; (vi) drafted the initial complaint and the Amended Complaint; and (vii) negotiated the Settlement and presented to the Court with a preliminary approval motion. ¶¶8, 27.

Accordingly, Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

## B.    The Settlement is the Result of Arm's-Length Negotiations

Rule 23(e)(2)(B) inquires whether "the propos[ed settlement] was negotiated at arm's length." Courts in the Ninth Circuit "put a good deal of stock in the product of

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Roberti v. OSI Sys, Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015).

The Parties retained Judge Otero as mediator because of his considerable experience adjudicating and mediating complex litigation. ¶10. Judge Otero's participation in achieving the Settlement underscores that it is the product of non-collusive, arm's-length negotiations. Judge Otero attests to the integrity of the mediation process finding that the negotiations were at all times conducted at arm's-length on an informed basis. Otero Decl., ¶14. With Judge Otero's guidance during and after the mediation session, the Parties reached the Settlement by ultimately accepting a mediator's proposal. Although the Court will determine whether the Settlement should be approved, Judge Otero recommends that the Settlement is a "fair and pragmatic resolution of this Action." *Id.*, ¶8.

As detailed in Section IV.E.3, all counsel in this Action are knowledgeable securities class action practitioners. Thus, the arm's-length negotiations favor final approval of the Settlement.

### C. The Relief the Settlement Provides is Adequate, Given the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Rule 23(e)(2)(C)(i) requires courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors (*see* Section IV.E). This requirement incorporates three of the traditional *Hanlon* factors the: strength of plaintiff's case; risk, expense, complexity, and likely duration of further litigation; and risk of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021) (*citing Hanlon*, 150 F.3d at 1026); *Hamni,* 2024 WL 3435259, at *4 ("there is a risk to both parties in continuing toward trial[,]" and there

would be "additional litigation costs, risks, and delay of trial and appeal[.]"). Each factor supports approval of the Settlement.

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375–76 (9th Cir. 1993). The Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

Because Plaintiffs face significant procedural hurdles, courts recognize "securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." *Hefler*, 2018 WL 6619983, at *13; *Rentech*, 2019 WL 5173771, at *6 ("securities fraud class actions are complex cases that are time-consuming and difficult to prove."). While Plaintiffs believe their case is meritorious, they remain cognizant of the substantial risk posed to the Settlement Class in continuing to litigate this action including surviving a motion to dismiss, class certification, discovery, summary judgment, trial, appeals, and recovering a judgment. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). Consequently, a settlement's "elimination of risk, delay, and further expenses weighs in favor of approval," *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018), especially where the case is "complex and likely to be expensive and lengthy to try." *Rodriguez,* 563 F.3d at 966. The Settlement offers a favorable, immediate, and guaranteed recovery eliminating the risk, delay, and expense of continued litigation.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

Here, Defendants would contest Plaintiffs' claims particularly that Plaintiffs would be unable to prove scienter and that JD.com did not make any statements. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("the issues of scienter and causation are complex and difficult to establish at trial."). Litigation and potential trial would risk Plaintiffs facing a jury that could ultimately side completely with Defendants, finding no evidence of fraud.

Plaintiffs believe class certification would be warranted, however, the Court could have disagreed. Class certification requires retaining market efficiency experts and taking and defending depositions. Ultimately, efforts to achieve class certification would be costly and not guaranteed. If Plaintiffs failed to obtain class certification, the benefit to the Settlement Class would be eliminated. Moreover, Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *Omnivision Techs.,* 559 F. Supp. 2d at 1041 (approving settlement and noting "there is no guarantee th[at] certification would survive through trial"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Further, even if a class was certified, Plaintiffs would still need to prove their claims. Discovery would be lengthy and costly, requiring extensive document productions, depositions of numerous witnesses, and document hosting services. Here, Plaintiffs would have to seek discovery from parties and witnesses located in China, further complicating discovery and creating significant hurdles for Plaintiffs to prove their case. Specific challenges to obtaining documents from Chinese-based defendants in U.S. litigation exist which would delay any recovery for Dada investors. According to Chinese law, productions outside of China must first be reviewed and approved by the necessary Chinese government officials. ¶33. This requirement slows down litigation and introduces potential risk to protracted litigation. Additionally, China does

9

not permit depositions on the mainland or virtual depositions which would require the cooperation of Defendants and witness to travel out of China for depositions. *Id*. Moreover, documents produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review. *Id*. Thus, the complexity, expense, and likely duration discovery favor approval of the Settlement.

After fact discovery, the Parties would engage in expert discovery on the questions of loss causation and damages, as well as other areas such as the application of accounting standards. Defendants would present their own expert testimony to demonstrate that the revelation of the alleged fraud did not cause the alleged stock drops, and/or that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the alleged fraud. ¶30. Given dueling expert reports, there would likely be *Daubert* motions. All told, expert discovery and trial preparation would prove to be expensive and complex. *Heritage Bond*, 2005 WL 1594403, at \*6.

Moreover, surviving summary judgment is uncertain because Defendants need only prevail on one element of Plaintiffs' claims. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (no triable issue of fact on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment on falsity and scienter). There is also a risk that Plaintiff may have an expert excluded, damaging their case. *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

At trial, even if Plaintiffs presented a convincing case, a jury may decide in Defendants' favor. *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559, at \*21 (N.D. Cal. Apr. 1, 2022) (defense verdict even after summary judgment was entered in plaintiffs' favor on the elements of falsity and scienter) (Ex. 8). Further, a jury verdict in Plaintiffs' favor could be overturned on a post-trial motion. *Glickenhaus & Co. v.*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

*Household Int'l, Inc.,* 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).

Moreover, additional practical obstacles exist that could prevent Plaintiffs from obtaining a greater result. Located in China, it is possible that Defendants would cease to engage in the litigation and thus, Dada investors would not have a source of recovery.[4] Lead Counsel experienced this first-hand in *Vanderhoef v. China Auto Logistics, Inc.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), involving a China-based company and individual defendants. After the court denied defendants' motions to dismiss, the Chinese defendants' attorneys withdrew from the action as defendants stopped engaging with or paying their counsel. The plaintiffs were forced to voluntarily dismiss their claims against the Chinese defendants without prejudice as they did not retain new counsel and ultimately vanished. ¶36; Ex. 9. Similarly, in *In re ChinaCast Educ. Corp. Sec. Litig.*, 2:12-cv-04621-JFW-PLA (C.D. Cal.), after years of litigation, including plaintiffs' successful appeal to the Ninth Circuit reversing a motion to dismiss decision, ChinaCast's counsel withdrew from the action after the company's insurers refused to cover litigation costs. The plaintiffs secured a default judgment of $65.8 million for the class, but ChinaCast filed for bankruptcy. The plaintiffs attempted to recover from ChinaCast's insurers, but to no avail. Despite more than seven years of litigation, investors received nothing from the China-based defendants. ¶37.

Even if Plaintiffs obtained a judgment, it would be nearly impossible to enforce a U.S. judgment in China as there is no agreement between the countries recognizing each other's judgments or reciprocity. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) (assessment of settlement amount should

---

[4] Plaintiffs' attempts to serve the individual defendants in China via the Hague Convention procedures have been unsuccessful. ¶¶7, 9.

account for the "significant risk of being unable to collect any judgment against the [] Defendants"). ¶¶34, 35.

Accordingly, the likely duration and expense of further litigation supports a finding that the Settlement is fair, reasonable, and adequate. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results"). Without a settlement, there exists the real possibility that Plaintiffs would spend years litigating the case to a verdict, and beyond, only to recover nothing. The Settlement, however, provides a guaranteed recovery, eliminating the risk, delay, and expense of continued litigation.

### D. The Settlement Meets the Remaining Rule 23(e)(2) Factors

#### 1. The Proposed Method for Distributing Relief is Effective

Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. The proposed method of distributing relief here is standard and effective in securities class action settlements. The Claim Form requires Settlement Class Members to provide information necessary to calculate their claims pursuant to the Plan. During the claim review process, SCS, under Lead Counsel's guidance, will allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claim(s), and, lastly, send Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan), after Court approval. The claims processing method proposed here is standard in securities class action settlements. Court have called this process "straightforward and effective." *Hamni*, 2024 WL 3435259, at *5 (noting that those who "do not opt-out timely will receive a pro rata share of the net settlement amount relative to their losses—no other action needs to be taken by class members, and there is no risk of unjustified claims."). This method is effective and necessary, as

neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.

### 2. The Proposed Award of Attorneys' Fees is Appropriate

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the Fee Brief, Lead Counsel seeks attorneys' fees of 25% of the Settlement Amount, plus interest, and expenses of $57,907.03, plus interest. This fee request, less than what was disclosed in the Notice, is consistent with awards granted in similar actions in the Ninth Circuit. Fee Brief, Section III(C)(5).

### 3. Other Agreements

Rule 23(e)(2)(C)(iv) requires disclosure of agreements made in connection with a proposed Settlement. The Parties disclosed their Supplemental Agreement that provides Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares opt-out. "To prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts," *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017), the number of shares that trigger the right to terminate has not been disclosed to Settlement Class Members. Such agreements are customary in securities class action settlements and pose no obstacle to final approval. *Rentech*, 2019 WL 5173771, at *7.

### 4. Settlement Class Members are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably. The Plan determines how money is distributed to all Authorized Claimants and provides no preferential treatment to Plaintiffs. *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *11 (C.D. Cal. July 24, 2023). The Settlement Fund is distributed *pro rata* to Authorized Claimants based on their recognized losses resulting from the ADSs price declines during the Settlement Class Period, as the Amended Complaint alleged. Lead Counsel developed the Plan in consultation with

Plaintiffs' damages expert and the Claims Administrator. ¶22. The Plan is similar to others that are routinely approved. *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at \*5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."); *Schneider v. Champignon Brands Inc.*, 2022 WL 22879587, at \*16 (C.D. Cal. Nov. 1, 2022) (similar proposed plan of allocation provides "indication that the distribution and allocation methods that Plaintiff proposes will result in inequitable treatment of class members.").

Apart from their *pro rata* recovery, Plaintiffs will seek reimbursement of costs they incurred representing the Settlement Class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming reimbursement to class representative in securities class action settlement).

### E.    The Remaining Ninth Circuit Factors Support Final Approval

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2): amount offered in settlement; extent of discovery completed and the stage of the proceedings; experience and views of counsel; presence of a governmental participant;[5] and reaction of the class members to the proposed settlement. These remaining factors all weight in favor of final approval.

### 1.    The Amount the Settlement Obtained Supports Final Approval

Whether the Settlement amount is reasonable is not determined by plugging values into a mathematical equation. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). As "[s]ettlement is the offspring of compromise[,]

---

[5] This factor is neutral as there were not government participants. *Tom v. Com Dev USA, LLC*, 2017 WL 10378629, at \*5 (C.D. Cal. Dec. 4, 2017).

the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Although a larger recovery is theoretically possible, the Settlement's benefits must be tempered by recognizing that any compromise involves concessions by all parties. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624; *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 325 (C.D. Cal. 2016). There is no guarantee that Plaintiffs could secure a judgment at or near the full amount of the class-wide damages they estimate. Balancing the specific risks, costs and potential delay, the Settlement is a reasonable and adequate recovery that is in the Settlement Class's best interests.

Moreover, because estimating aggregate damages can be challenging due to, *inter alia*, assumptions that must be made regarding trading activity, a jury may credit Defendants' expert and greatly reduce any damages awarded. Class-wide damages could be denied entirely if the Court, the jury, or an appellate court were to accept some or all of Defendants' defenses, including that certain statements are not actionable or that class members' losses are attributable to causes other than the alleged misstatements or omissions. *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiffs carefully considered these risks to a greater recovery – or any recovery at all.

The $4,800,000 Settlement Amount warrants final approval. The Settlement recovers approximately 13.7% of the maximum estimated damages of $34,900,000 under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This best-case scenario assumes that: (i) Plaintiffs are able to succeed on a motion to dismiss, at summary judgment, and at trial; (ii) the Court certifies the same class period

as the Settlement Class Period; and (iii) the Court and jury accept Plaintiffs' damages theory, including proof of loss causation for the multi-day alleged decline in ADS price. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages.

The Settlement's recovery compares favorably to those in other securities class action settlements in this Circuit. *See, In re Snap Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (settlement represented "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (4.5%); *Kendall v. Odonate Therapeutics, Inc.,* 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (3.49%); *Omnivision*, 559 F. Supp. 2d at 1042 (9%); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (8%); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (1.99%); *Heritage Bond,* 2005 WL 1594389, at *8 (noting recoveries between 2% to 3%); *Vataj v. Johnson*, 2021 WL 5161927, at *6, *9 (N.D. Cal. Nov. 5, 2021) (2%); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (between 5% and 9.5%).

Further, the Settlement compares favorably to recent recoveries in similarly sized cases. According to Cornerstone Research, the median recovery in cases alleging Rule 10b-5 claims with maximum estimated damages between $25,000,000 and $74,000,000 was approximately 8.8% of estimated damages in 2023, and 8.3% between 2014-2022. (Ex. 6, Fig. 5). Between 2019-2023, securities class actions that settled before a motion to dismiss was filed recovered a median of 5.5% of estimated damages. *Id.*, Fig. 13. Additionally, NERA Economic Consulting concluded that between January 2015 and December 2024, for cases with losses between $20,000,000 and $49,000,000, the median settlement value as a percentage of losses was 5.2%. (Ex. 7, Fig. 23). In 2024, the median recovery in securities class actions was approximately 1.2%. *Id.*, Fig. 24. Considering the extent of the recovery, as well as risks associated

16

with continued litigation and the time and expense that would be required to prosecute the Action through a trial, the Settlement is a reasonable and adequate recovery for the Settlement Class.

### 2. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also assess settlements based upon the stage of the proceedings and the amount of information available to the parties to evaluate the strengths and weaknesses of their case. *Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016). Consequently, settlements reached in the early stages of litigation are approved after informed decision making and a thorough investigation. *See, e.g., Mego*, 213 F.3d at 459 (class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (after the filing motion to dismiss and prior to significant discovery); *LJ Int'l,* 2009 WL 10669955, at *7 (recognizing that "settling relatively early… conferred an important benefit on class members who will benefit from the Settlement Fund."). For this reason, courts have commended class counsel for recognizing when, as the situation here, a prompt resolution of the matter is in the best interest of the class. *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), aff'd, 331 F. Appx. 452, 457 (9th Cir. 2009).

During the Private Securities Litigation Reform Act of 1995 ("PSLRA") mandated discovery stay, Lead Counsel: (i) reviewed Dada's public statements during the Settlement Class Period; (ii) reviewed public documents, securities and financial

analyst reports, and news articles concerning Dada in both English and Chinese sources; (iv) retained investigators in China to conduct interviews and locate documents; and (v) consulted a damages expert and an accounting expert. ¶¶8, 27. Thus at the time of Settlement, Plaintiffs and Lead Counsel had a fulsome understanding of the Parties' respective positions on the legal and factual issues in the case. *Immune Response*, 497 F. Supp. 2d at 1174 (investigation provided sufficient understanding of merits even though the PSLRA precluded discovery); *Schneider*, 2022 WL 22879587, at *12 ("Plaintiff had sufficient information to make an informed decision" despite no formal discovery due to PSLRA discovery stay). Plaintiffs and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a reasonable Settlement, supporting final approval.

### 3. Experienced Counsel's Recommendations

As counsel "are most closely acquainted with the facts of the underlying litigation," courts accord "great weight" to the recommendation of experienced and informed counsel in support of the settlement. *DIRECTV*, 221 F.R.D. at 528; *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

Given their experience and familiarity with the Action, Lead Counsel's recommendation of the Settlement supports final approval. Rosen's experience and reputation allowed it to leverage the credible threat of further litigation, but also to recognize that the Settlement was a better option for Dada investors. Courts have recognized that Rosen "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is highly qualified [and] experienced in securities class actions"); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (securing $250,000,000 settlement – one of the largest ever

with a Chinese issuer, the court noted that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."); Ex. 5. Thus, Lead Counsel's experience supports approval. Likewise, Defense Counsel, Skadden, Arps, Meagher & Flom LLP, zealously represented its clients at all stages of the litigation and were knowledgeable about the merits of the case. *Id*., ¶12. The fact that experienced and informed counsel recommended the Settlement supports preliminary approval.

Finally, Plaintiffs' support for the Settlement (Exs. 3-4) should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DIRECTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).

### 4. The Favorable Reaction of the Settlement Class Supports Approval

The reaction of the Settlement Class strongly supports final approval. To date, 16,129 potential Settlement Class Members were notified of the Settlement by mailed Postcard Notice and/or by emailed link to the Long Notice and Claim Form. Bravata Decl. ¶11. In response to the notice program, there have been no objections to or requests for exclusion from the Settlement. *Id*., ¶¶15-16; ¶20.

The absence of objections to and requests for exclusion from a proposed class action settlement supports approval. *Kendall*, 2022 WL 1997530, at *6; *DIRECTV,* 221 F.R.D. 529 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement when 0.56% of eligible class members requested exclusion); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports approval). "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

Accordingly, the absence of any objections and exclusion requests strongly supports final approval.

The deadline for objections and requests for exclusions from the Settlement is February 24, 2025. Plaintiffs will respond to objections or exclusion requests, if any, in their reply.

## V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Court preliminarily approved the Plan, which was detailed in the Long Notice. Plaintiffs now request that the Court grant final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Dada ADSs. The Plan was carefully developed to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. ¶¶22-25.

Because the Plan mirrors the Amended Complaint's allegations, plans are rational when they "allocate money depending on the timing of purchases and sales of the securities at issue." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (plan is "even handed" because "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares"). Here, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund based on the claimant's recognized loss as calculated in accordance

with the Plan. ¶23. There have been no objections to the Plan. *Id*., ¶25; Bravata Decl. ¶16. The Plan fairly compensates Settlement Class Members and should be approved.

## VI.  NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS

Plaintiffs provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved. As directed, SCS caused links to the webpage hosting the Long Notice and Claim Form to be emailed to persons for whom email addresses were obtained; if email addresses could not be reasonably obtained, the Postcard Notice was mailed to all those who could be identified with reasonable effort; and the Summary Notice was published on *GlobeNewswire* and in *Investor's Business Daily*. Bravata Decl. ¶¶3-12. Following this robust notice program, 16,129 notices were mailed and/or emailed to potential Settlement Class Members. *Id*., ¶11.

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962. The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the Parties propose the Settlement; (3) the estimated average recovery per damaged ADS; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan as described in the Notice.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:24-cv-00239-SVW-BFM

Similar notice programs and substance of notice are routinely approved. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020); *Rentech,* 2019 WL 5173771, at *8; *Immune Response*, 497 F. Supp. 2d at 1170; *Hamni*, 2024 WL 3435259, at *6, *7.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Preliminary Approval Order, Rule 23, the PSLRA, and due process.

## VII.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated: February 17, 2025

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*

Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Emails: philkim@rosenlegal.com

Jing Chen (*pro hac vice*)
Gonen Haklay (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Emails: jchen@rosenlegal.com
        ghaklay@rosenlegal.com

Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

22

Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com


*Lead Counsel for Plaintiffs and the Class*


## <u>CERTIFICATE OF COMPLIANCE WITH LR 11-6.2</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Date: February 17, 2025

*/s/ Phillip Kim*

### CERTIFICATE OF SERVICE

I, Jing Chen, hereby declare under penalty of perjury as follows:

I am a Partner at The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On February 17, 2025, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 17, 2025.

/s/ Jing Chen