Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAN WANG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DADA NEXUS LIMITED, JEFF HUIJIAN HE, BECK ZHAOMING CHEN, LAURA MARIE BUTLER, BAOHONG SUN, JIAN HAN, AND JD.COM, INC.<br><br>Defendants. | Case No. 2:24-cv-00239-SVW-BFM<br><br>**DECLARATION OF JING CHEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1)  FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS; AND (2) AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS**<br><br>CLASS ACTION<br><br>Date:        March 17, 2025<br>Time:       1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson |

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

## TABLE OF EXHIBITS TO DECLARATION

| EXHIBIT | TITLE |
| --- | --- |
| 1 | Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 2 | Declaration of Hon. S. James Otero (Ret.) |
| 3 | Declaration of Senthil Subramanian |
| 4 | Declaration of Yan Wang |
| 5 | The Rosen Law Firm, P.A.'s Firm Resume |
| 6 | Excerpts from Janeen McIntosh, Laarni T. Bulan, and Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* (Cornerstone Research 2023) |
| 7 | Excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review,* (NERA Economic Consulting, 2025) |
| 8 | Jury Verdict Form from *In re Tesla, Inc. Securities Litigation,* No. 18-CV-04865-EMC (N.D. Cal.) |
| 9 | Letter filed on August 9, 2022 in the action *Vanderhoef v. China Auto Logistics, Inc., et al.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.) as Dkt. 140. |
| 10 | Table of Hours Spent on Action by Professionals at The Rosen Law Firm, P.A. |
| 11 | Chart of Billing Rates of Peer Defense Firms in Bankruptcy Proceedings in 2023 |

2

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

I, Jing Chen, declare the following, to the best of my knowledge, pursuant to 28 U.S.C. §1746.

1.      I am a Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Senthil Subramanian ("Lead Plaintiff") and named plaintiff Yan Wang ("Named Plaintiff" and with Lead Plaintiff, "Plaintiffs") in the above-captioned Action.[1] I am an attorney duly licensed to practice law in the States of New York and New Jersey and admitted *pro hac vice* in this Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto. I intend nothing in this Declaration to constitute a specific or general waiver of attorney-client privilege or any other applicable privilege or doctrine.

2.      I submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement, Plan of Allocation, and Final Certification of Settlement Class; and (II) an Award of Attorneys' Fees and Expenses and Award to Plaintiffs. As set forth in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement, Plan of Allocation, and Final Certification of Settlement Class ("Final Approval Memorandum"), Plaintiffs seeks final approval of the $4,800,000 Settlement for the benefit of the Settlement Class,[2] as well as final approval of the proposed Plan of

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement, filed on October 14, 2024 ("Stipulation") (Dkt. 59).

[2] The Settlement Class is defined as all Persons and entities who purchased publicly traded Dada Nexus Limited ("Dada") American Depositary Shares ("ADS") between March 9, 2023 and April 22, 2024, both dates inclusive, and who were damaged thereby. Excluded from the Settlement Class are: (a) Persons who suffered no compensable losses; (b) Defendants; the present and former officers, directors, and affiliates of Dada and JD.com, Inc. ("JD") at all relevant times; immediate family members, legal representatives, heirs, successors or assigns of any excluded person or

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

Allocation of the Net Settlement Fund to eligible Settlement Class Members, and final certification of the Settlement Class.

3.    As set forth in the Memorandum of Points and Authorities in Support of the Motion for an Award of Attorneys' Fees and Expenses and Award to Plaintiffs ("Fee Memorandum"), Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Fund, or $1,200,000, plus interest, reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $57,907.03, plus interest, and an award to Plaintiffs in total of $15,000 comprised of $10,000 to Lead Plaintiff and $5,000 to Named Plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the time they devoted to their representation of the Settlement Class.

4.    The purpose of this Declaration is to set forth pertinent facts which do not otherwise appear in documents filed in this case or other public sources. The reasons why the Settlement, Plan of Allocation, fee and expense requests, and award to Plaintiffs should be approved are set out in the memoranda of law in support of the Motions.

## The Litigation and Settlement Negotiations

5.    Named Plaintiff Wang and Lead Counsel initiated this Action in January 2024.

6.    The Court appointed Subramanian as Lead Plaintiff and Rosen Law as Lead Counsel on April 5, 2024.

---

entity; and any entity affiliated with any excluded person or in which any excluded person or entity has a controlling interest; and (c); Persons who file valid and timely requests for exclusion from the Settlement Class in accordance with the Preliminary Approval Order. Stipulation ¶1.36.

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

7. Lead Counsel attempted to serve the initial complaint on Defendants Zhaoming Chen and Huijian He in China according to the Hague Service Convention, but were unsuccessful.

8. Plaintiffs filed the operative [Corrected] Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") on June 12, 2024 (Dkt. 45). For the Amended Complaint, Plaintiffs and Lead Counsel sought to uncover the reasons for Defendants' allegedly misleading statements regarding Dada's revenues. To draft the Amended Complaint, Lead Counsel: (i) reviewed Dada's U.S. Securities and Exchange Commission ("SEC") filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewed public documents, reports (including research reports by securities and financial analysts), announcements, and news articles concerning Dada in both English and Chinese sources; (iv) retained investigators in China to interview former Dada employees and other knowledgeable third parties independently and obtain documents; and (v) consulted with a damages expert and an accounting expert.

9. Upon filing the Amended Complaint, Plaintiffs promptly requested service of process of the amended complaint on all individual defendants, including the newly added defendants, via the Hague Service Convention. To date, Plaintiffs have not received any response from the Chinese government regarding the status of these service requests.

10. After Plaintiffs filed the Amended Complaint, the Parties decided to explore mediation, retaining the Honorable S. James Otero (Ret.). Judge Otero retired from the bench of this Court in 2020 and has been working as a private mediator at JAMS for several years. (Exhibit 2, Otero Decl., ¶5).

11. The Parties participated in the mediation on August 14, 2024. Prior to the mediation, the Parties exchanged detailed mediation statements. Although this mediation session ended without resolution, the Parties continued negotiations with

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

Judge Otero's assistance. Eventually, a week after the mediation, the Parties reached an agreement in principle by accepting a mediator's proposal.

12. With Judge Otero's guidance, the Parties engaged in hard-fought negotiations with counsel on both sides advocating forcefully for their clients. Dada and JD are represented by Skadden, Arps, Meagher & Flom LLP, skilled and experienced securities practitioners with an exemplary securities practice. Defense Counsel was well-informed about the case. Judge Otero recognized that each side was knowledgeable and "[t]he parties were represented during the mediation process by well-prepared and competent counsel, who negotiated zealously and at arm's length for their clients." Otero Decl., ¶¶8, 12.

13. Although recognizing that the Court will make its own determination, Judge Otero noted that "the proposed settlement as reasonably reflective of the risks and potential rewards of the claims being settled." *Id*., ¶8.

14. Given my firm's experience in litigating securities class actions, particularly against Chinese issuers, and with discussions with Plaintiffs during settlement negotiations, Plaintiffs and Lead Counsel did not agree to a settlement until we thought it was a fair and reasonable result.

15. After the settlement in principle, the Parties negotiated the various Settlement documentation, including the Stipulation and exhibits. On October 14, 2024, Plaintiffs filed the Stipulation and moved for preliminary approval of the Settlement. (Dkt. 57-59).

16. On November 27, 2025, the Court entered the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. 68).

17. Pursuant to the Preliminary Approval Order, the Court approved Lead Counsel's selection of Strategic Claims Services ("SCS") as the Claims Administrator. *Id*., at ¶11.

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

**Notice Procedures and Reaction of the Settlement Class Members**

18.    At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, SCS published the Summary Notice electronically on *GlobeNewswire* and in print in *Investor's Business Daily* on December 30, 2024. Exhibit 1, Bravata Decl. ¶12. SCS also posted the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on December 9, 2024. *Id*. ¶14.

19.    To disseminate individual notice, 16,129 notices were either mailed with Postcard Notice or emailed with links of the Long Notice and Claim Form to the Settlement website to potential Settlement Class Members. *Id*. ¶11. A total of 4,184 copies of the Postcard Notice were mailed to potential Settlement Class Members and a total of 11,945 links were emailed to potential Settlement Class Members. *Id*. ¶¶9-10.

20.    Objections to and requests for exclusion from the Settlement must be received by February 24, 2025. Neither Counsel nor the Claims Administrator have received any objections to any aspect of the Settlement (including the requests for attorneys' fees, expenses, and award to Plaintiffs) nor are there any objections on the Court's docket. Neither Lead Counsel nor the Claims Administrator have received any requests exclusion. *Id*., ¶¶15-16.

21.    Thus, the reaction of the class supports the adequacy, fairness, and reasonableness of the Settlement.

**Plan of Allocation**

22.    Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Bravata Decl., Ex. B (Long Notice) at 6-8. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

the same damages report Plaintiffs used to estimate their maximum recoverable damages and it closely tracks Plaintiffs' theory of the case.

23.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

24.    The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Settlement Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

25.    In my view, based upon my experience prosecuting securities class actions, the Plan of Allocation provides a fair, reasonable, and rational method of allocating the Settlement Funds to Authorized Claimants. There have been no objections to the Plan.

### The Fairness and Reasonableness of the Settlement

26.    The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Lead Counsel had thoroughly investigated the claims and consulted with a damages expert.

27.    During this litigation, Plaintiffs and Lead Counsel had become knowledgeable about the strengths of the claims as well as the real risks of continued litigation which could potentially result in no recovery for Dada investors. In particular, Lead Counsel:

8

a. conducted extensive legal research and investigation of the factual allegations and claims of Plaintiffs and the putative class, which included: (a) hiring investigators in China to interview witnesses including former Dada employees and pertinent third parties as well as locate and obtain documents; (b) retaining an accounting expert to assist in pleading Dada's alleged accounting fraud; (c) reviewing Dada's SEC filings, press releases, earnings calls, numerous reports issued about Dada including from securities and financial analysts, and news about Dada in both English and Chinese sources; and (d) retaining a damage expert;

b. drafted and filed initial complaint and the Amended Complain, including conducting legal and factual research in anticipation of a motion to dismiss;

c. prepared a detailed mediation statement and participated in a mediation session as well as extended negotiations after the mediation;

d. negotiated and finalized the Settlement;

e. successfully moved for preliminary approval of the Settlement; and

f. oversaw the Court-approved notice program

28. The $4,800,000 Settlement is a favorable result, representing approximately 13.7% of the Settlement Class's best-case, maximum recoverable damages estimate. Under Plaintiffs' best-case scenario – assuming Plaintiffs overcame all of the litigation obstacles and Defendants do not prevail on any of their arguments –Plaintiffs' expert estimated that maximum potentially recoverable class wide damages are approximately $34,900,000.

29. If the Court grants final approval of the Settlement, Plaintiffs and all Settlement Class Members who remain in the Settlement Class will forever release

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

their claims that were alleged or could have been alleged against Defendants in this Action.

30. There was much risk if litigation continued as a larger verdict for Settlement Class Members would require that Plaintiffs: survive a motion to dismiss; certify a class; defeat a motion for summary judgment; and succeed at trial in proving to a jury that 100% of Dada's price declines were caused by the revelation of fraud. Each of the pre-trial steps in the litigation posed significant risk that Plaintiffs' claims substantially reduced in size and scope. Jury trials are always uncertain as to which side's proof and expert testimony will be credited. For instance, Defendants could present an expert that attributes the fall in the ADS price to reasons unrelated to the alleged fraud.

31. Moreover, Lead Counsel are experienced securities class action practitioners and have litigated numerous actions against Chinese issuers. Exhibit 5 (firm resume); s*ee e.g., Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (achieving $250 million settlement against Alibaba, with the Court stating that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *De Schutter v. Tarena International, Inc., et al.*, Case No. 1:21-cv-03502 (E.D.N.Y.).

32. As such, they are particularly aware of the risks associated with such litigation including the fact that Defendants and the sources of proof were located in China as well as issues related to collectability of any settlement or judgment from Chinese Defendants. Plaintiffs and Lead Counsel factored these risks into the decision to enter the Settlement.

33. As Dada and JD are based in China, discovery, which is already complex, timely, and costly, would pose additional obstacles. China does not permit depositions on the mainland or virtual depositions which would require the cooperation of Defendants and witnesses to travel out of China for depositions. Additionally, for any documents to be produced to Plaintiffs, Defendants' counsel would have to review

10

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

the documents, send them to the appropriate authorities in the Chinese government, and wait for permission to approve their release. Lead Counsel has been, and is currently, involved in litigation with China-based defendants in which discovery has been significantly stalled by this process. Additionally, any documents that were eventually produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review.

34. Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, it may be a pyrrhic victory. Enforcing a U.S. judgment in China is nearly impossible as the U.S. Department of State has noted that "[t]here is no bilateral treaty or multilateral convention in force between the United States and any other country on reciprocal recognition and enforcement of judgments."[3] Although the international community is attempting to create consistency in reciprocity among foreign counties, progress between the United States and China has not occurred. Although not yet in effect, the 2019 Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters ("Hague Judgment Convention"),[4] is designed to facilitate the enforceability of judgments among contracting parties. The Hague Judgment Convention's stated goal is "to promote effective access to justice for all and to facilitate rule-based multilateral trade and investment, and mobility, through judicial co-operation." *Id*. Even if it were operative, the Hague Judgment Convention would not be helpful here as the United States is a signatory but China is not. *Id*.

35. Moreover, China regularly denies recognition and enforcement of foreign judgments, including from the United States, based on reciprocity or public policy. Shun-Hsiang Chen, *Signed, Sealed, & Undelivered: Unsuccessful Attempts of Foreign*

---

[3]https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Enforcement-of-Judgements.html (last accessed February 14, 2025).

[4] https://www.hcch.net/en/instruments/conventions/full-text/?cid=137 (last accessed February 14, 2025).

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

*Judgment Recognition Between the U.S. and China*, 16 Brook. J. Corp. Fin. & Com. L. 167 (2022). As China does not have an agreement with the United States, enforcement of United States judgments would fall within the parameters of reciprocity. However, "China's reciprocity system is considered one of the most restrictive in the world and regularly utilized to deny foreign judgment recognition and enforcement." *Id.* at 184. As of June 2022, Chinese courts had only recognized and enforced two judgments from the United States, *id.*, neither of which were judgments from securities lawsuits.

36.    Further, although Defendants retained counsel based in the United States, the risk remains that Defendants could disengage with its counsel and this litigation. Lead Counsel experienced this first-hand in *Vanderhoef v. China Auto Logistics, Inc.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), involving China Auto Logistics, Inc. ("CALI"), a Nevada corporation with headquarters in China and China-based individual defendants. Originally, CALI was represented by K&L Gates LLP and the China-based individual defendants had their own counsel. Prior to a decision on CALI's motion to dismiss, plaintiffs and CALI engaged in court ordered mediation over two days. As settlement efforts were unsuccessful, CALI's motion was reinstated. The court then denied CALI's and the China-based individual defendants' motions to dismiss. Before CALI's deadline to file an answer, its counsel requested to withdraw from the action as CALI had not paid its attorneys for almost a year. The China-based individual defendants filed an answer, but soon after their attorneys also withdrew as those defendants stopped engaging meaningfully with their counsel and failed to pay their attorneys. In the end, the plaintiffs were forced to voluntarily dismiss their claims against CALI and the China-based individual defendants without prejudice as they did not retain new counsel and ultimately vanished. *See* Exhibit 9 (letter from plaintiffs outlining history of events and grounds for dismissal).

37.    Similarly, in *In re ChinaCast Education Corporation Securities Litigation*, 2:12cv-04621-JFW-PLA (C.D.Cal.), for about six years plaintiffs diligently pursued a securities class action against ChinaCast Education Corporation, a Delaware

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

company operating in China. The effort included a successful appeal at the Ninth Circuit which reversed the district court's dismissal decision. ChinaCast's insurers refused to cover litigation costs, however, and the company's counsel withdrew from the action leaving ChinaCast unrepresented. The plaintiffs later secured a default judgment of $65.8 million for the class, but the very next day, ChinaCast filed for bankruptcy. In an attempt to recover the default judgment, plaintiffs spent an additional two years pursuing a lawsuit against ChinaCast's multiple insurers. *See Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters*, 2:17-cv-05523-GW-RAO (C.D.Cal.). Unfortunately, plaintiffs' claims were dismissed due to the expansive exclusion provisions in the insurance policies. Therefore, despite more than seven years of dedicated efforts by the plaintiffs' counsel, there was no financial recovery for the investors from the China-based defendant.

38.    Throughout all stages of the litigation, Lead Counsel gave periodic updates to Plaintiffs about the status of the Action and discussed each step of the case with Plaintiffs. As set forth in their declarations, by the time the Settlement was reached, Plaintiffs were in a position to evaluate the risks and benefits of continued litigation and authorize approval of the Settlement. Declaration of Senthil Subramanian ("Subramanian Decl.") (Exhibit 3), ¶5; and Declaration of Yan Wang ("Wang Decl.") (Exhibit 4), ¶5.

### The Attorneys' Fees and Expenses Requested are Fair and Reasonable

39.    Lead Counsel requests attorneys' fees of 25% of the Settlement Amount, or $1,200,000, plus interests, and reimbursement of out-of-pocket litigation expenses of $57,907.03 in total, plus interest.

40.    This request, is less than what was previewed in the Notice. In the Notice, Plaintiffs informed potential Settlement Class Members that Lead Counsel intended to seek an award up to one-third of the Settlement Fund and up to $95,000 in litigation expenses. Bravata Decl., Ex. A, Ex. B at 1, 9, Ex. C.

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

41.     From the outset, Lead Counsel embarked on a difficult, expensive, and likely lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiffs and the Settlement Class. In undertaking that responsibility, Lead Counsel dedicated sufficient resources to the Action, making funds available to compensate staff and to cover the expenses the Action required.

42.     From the initiation of this Action through February 14, 2025, my firm performed 691.2 professional work hours for a lodestar amount of $672,385.50. *See* Exhibit 10, Table of Hours Spent on Action by Rosen Law Professionals. The $1,200,000 in attorneys' fees that Lead Counsel requests represent a lodestar multiplier of approximately 1.78.

43.     The billing rates used in the chart in Exhibit 10 reflect current billing rates for 2025 and were prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.[5]

---

[5] Courts routinely consider current billing rates when evaluating attorney time as "[a]ttorneys in common fund cases must be compensated for any delay in payment[.]" *Stanger v. China Elec. Motor, Inc.,* 812 F.3d 734, 740 (9th Cir. 2016). To account for the delay in payment, "(1) the court may apply the attorneys' current rates to all hours billed during the course of the litigation; or (2) the court may use the attorneys' historical rates and add a prime rate enhancement." *Id*. Courts in this Circuit and around the country routinely apply current rates when performing a lodestar analysis, the Court should follow suit. *Purple Mountain Tr. v. Wells Fargo & Co*., 2023 WL 11872699, at *5 (N.D. Cal. Sept. 26, 2023) (noting its use of "current rates" for lodestar); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119 n.6 (C.D. Cal. 2012) ("[F]or the fee award to be reasonable, it must be based on current, rather than historic, hourly rates") *citing Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Hi-Crush Partners L.P. Sec. Litig*., 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("The use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation").

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

44.    Rosen Law's rates are comparable to peer securities class action and complex litigation practitioners.[6]

45.    Courts in this District have previously awarded attorneys' fees to Rosen Law based on substantially the same rates presented here. *See e.g., In re FAT Brands, Inc. Sec. Litig.*, Case No. 2:22-cv-1820-MCS-RAO (C.D. Cal.), Dkt. 67-2 (declaration setting forth 2023 hourly rates for Rosen attorneys) and 71 (order awarding attorneys' fees); *Oh v. Hanmi Fin. Corp.,* Case No. 2:20-cv-2844-FLA-JCx (C.D. Cal.), Dkt. 94-4 (declaration setting forth 2024 hourly rates for Rosen attorneys) and 98 (order awarding attorneys' fees). As is common in the legal marketplace, the billing rates for Rosen Law professionals increase each year.[7]

---

[6] *See Parkinson v. Hyundai Motor Am*., 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) ("Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates."). As demonstrated in Exhibit 11, Lead Counsel's rates are consistent with, or lower, than peer defense firms. This chart was compiled by reviewing fee applications submitted by nationwide defense firms in bankruptcy proceedings in 2023. Moreover, Rosen's hourly rates for attorneys who worked on this case are consistent with those of other attorneys engaged in similar litigation in this Circuit and throughout the country. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017) (approving fee award with "billing rates ranging from \$275 to \$1600 for partners, \$150 to \$790 for associates, and \$80 to \$490 for paralegals"); *Fleming v. Impax Lab'ys Inc.,* 2022 WL 2789496, at \*9 (N.D. Cal. July 15, 2022) (approving hourly rates of \$760 to \$1,325 for partners, \$895 to \$1,150 for counsel, and \$175 to \$520 for associates, finding these "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, 2022 WL 826903, at \*3 (C.D. Cal. Mar. 14, 2022) (finding "rates of \$895 to \$1,295 per hour for partners and counsel, and between \$565 and \$985 for associates" to be reasonable).

[7] *Parker v. Vulcan Materials Co. Long Term Disability Plan*, 2012 WL 843623, at \*7 (C.D. Cal. Feb. 16, 2012) ("It is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice.").

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

46.    Additionally, Rosen Law expended a total of $57,907.03 in un-reimbursed expenses in connection with the prosecution of the Action as follows:

**LIST OF UNREIMBURSED EXPENSES**

| Category | Amount |
|---|---|
| Investigator Fees | $11,999.16 |
| Accounting Expert Fees | $4,647.50 |
| Financial Expert Fees | $5,000.00 |
| Online Computer Legal Research and Document Retrieval Fees | $3,159.30 |
| Court Filing Fees | $405.00 |
| *Pro Hac Vice* and Certificate of Good Standing Fees | $2,202.85 |
| Mediation Fees | $15,833.50 |
| Courtesy Copies, Postage, and FedEx Fees | $179.42 |
| Service of Process | $930.65 |
| Translation Fees | $2,274.01 |
| Notice to Class Members Fees/Press Releases | $4,046.00 |
| Travel, Transportation, and Meals* | $7,229.64 |
| **TOTAL EXPENSES** | **$57,907.03** |

*Includes anticipated expenses associated with attending the Settlement Hearing.

47.    The expenses set forth above are reflected in Lead Counsel's books and records. These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for my firm and are an accurate record of the expenses incurred in the prosecution of the Action.

48.    To date, Lead Counsel have received neither compensation for their efforts nor reimbursement of necessary out-of-pocket expenses on behalf of Plaintiffs and the Settlement Class.

49.    The expenses Lead Counsel incurred in the chart above were reasonable and necessary for the successful prosecution of this case.

16

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

50.    In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

51.    Lead Counsel's work will not end with final approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing replies in support of its motions for final approval and for attorneys' fees, preparing for and appearing at the Settlement Hearing, overseeing the claims process, filing a motion for distribution of the Net Settlement Fund, and overseeing the distribution of the Net Settlement Fund to eligible Settlement Class Members. Lead Counsel will not seek additional compensation for these tasks.[8]

### The Requested Awards to Plaintiffs Are Justified

52.    Plaintiffs have led this Action on behalf of the Settlement Class, communicating with Lead Counsel regarding the litigation and the Settlement. For their time pursuing this litigation on behalf of Dada investors, they seek an award to compensate them for their time pursuant to the PSLRA.

53.    As demonstrated in his declaration, Lead Plaintiff Subramanian: (i) communicated with his attorneys regarding the case, as well as strategy; (ii) reviewed the pleadings in the action including the initial complaint and the Amended Complaint; (iii) learned about the role of the lead plaintiff by discussing it with attorneys at Rosen Law; (iv) reviewed information about Dada as well as the case and discussed his findings with his attorneys; (v) produced information and documents to his attorneys; (vi) reviewed significant filings in the Action; (vii) consulted with his attorneys regarding the settlement negotiations; and (viii) evaluated and approved the proposed Settlement. Subramanian Decl., ¶4.

---

[8] On reply, Plaintiffs and SCS will provide the Court an update on the Administrative Costs incurred and estimated to be incurred as well as claims submitted.

17

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

54.     As demonstrated in her declaration, Named Plaintiff Wang has been involved in this Action from the beginning, filing the initial complaint. Ms. Wang also: (i) communicated with her attorneys regarding the case, as well as strategy; (ii) reviewed the pleadings in the action including the initial complain and the Amended Complaint; (iii) reviewed information about Dada as well as the case and discussed her findings with her attorneys; (iv) produced information and documents to her attorneys; (v) reviewed significant filings in the Action; (vi) consulted with her attorneys regarding the settlement negotiations; and (vii) evaluated and approved the proposed Settlement. Wang Decl. ¶¶3-4.

55.     Given their involvement in spearheading the litigation, Plaintiffs believe the Settlement is fair and reasonable, representing a very favorable result for Dada investors. Subramanian Decl., ¶5; Wang Decl., ¶5.

56.     For their considerable time and effort, Lead Plaintiff Subramanian requests an award of $10,000 and Named Plaintiff Wang requests an award of $5,000.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2025

*/s/ Jing Chen*

18

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM

**CERTIFICATE OF SERVICE**

I, Phillip Kim, hereby declare under penalty of perjury as follows:

I am a Partner at The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On February 17, 2025, I electronically filed the foregoing DECLARATION OF JING CHEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS; AND (2) AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 17, 2025.

*/s/ Phillip Kim*

DECLARATION OF JING CHEN; 2:24-cv-00239-SVW-BFM